[No. B215860. Second Dist., Div. Eight. Mar. 16, 2011.]

MICHAEL HALL, Plaintiff and Appellant, v.
GOODWILL INDUSTRIES OF SOUTHERN CALIFORNIA, Defendant
and Respondent.

## COUNSEL

Law Offices of Leslie Ann Boyce and Leslie Ann Boyce for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller and Ernest Slome for Defendant and Respondent.

## OPINION

**BIGELOW, P. J.**—Plaintiff and Appellant Michael Hall filed suit against Goodwill Industries of Southern California (Goodwill) alleging a retaliation claim under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.), and wrongful termination. The trial court granted summary judgment to Goodwill on the ground that Hall's action was barred by the statute of limitations. The court subsequently denied Hall's motion for

a new trial based on a claim that newly discovered evidence permitted the court to apply equitable tolling principles to the limitations period. We conclude that the one-year limitations period set forth in Government Code section 12965, subdivision (b) (section 12965(b)) began to run as of the date of the right-to-sue notice issued to Hall and, as a result, Hall's complaint was untimely filed. We further conclude the trial court properly denied Hall's motion for a new trial because he did not present any newly discovered evidence in support of the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 2, 2004, Hall filed a complaint with the Department of Fair Employment and Housing (DFEH or department). Hall alleged that after he supported a coworker who was being sexually harassed by a supervisor and helped her complain about the harassment, Goodwill retaliated against him and terminated his employment for pretextual reasons. Hall requested an immediate right-to-sue notice. Hall's coworker's counsel, Attorney Boyce, helped him file the administrative complaint. Although Hall did not retain Boyce at that time, she agreed to let him use her address to receive mail from the DFEH. The DFEH issued a notice of case closure and right-to-sue notice on December 24, 2004. Boyce received the right-to-sue notice on December 31, 2004.

According to Hall, after Goodwill terminated his employment he was unable to find new work. He became homeless and grew "increasingly depressed and hopeless." Hall, a recovering addict, relapsed and began to use drugs while living on the streets "in a demented state." Eventually, on November 4, 2005, Hall voluntarily entered a residential substance abuse rehabilitation program. After 30 days in the facility, he contacted Boyce. She met Hall at the rehabilitation center and showed him the right-to-sue notice. Hall retained Boyce on December 12, 2005. On December 30, 2005, Hall filed a civil complaint against Goodwill for retaliation in violation of FEHA and wrongful termination.

In March 2007, Goodwill filed a motion for summary judgment. Among other things, Goodwill argued Hall's action was untimely because he filed suit more than one year after the DFEH issued him a right-to-sue notice. Hall contended he had filed within one year of when he received the right-to-sue notice and the complaint was timely. In July 2008, the trial court denied the motion, finding there were disputed issues of material fact.

In August 2008, Goodwill filed a petition for writ of mandate contending the trial court erred in not finding Hall's complaint barred by the one-year limitations period set forth in section 12965(b). (*Goodwill Industries of Southern California v. Superior Court* (Oct. 28, 2008, B210068) (petn. dism.).) In October 2008, this court issued an alternative writ of mandate. We concluded the issue of whether the one-year limitations period began as of the date of the right-to-sue notice, or when Hall received the notice, was a legal question the trial court was required to resolve before ruling on the summary judgment motion. We directed the trial court to either vacate the order denying Goodwill's summary judgment motion and issue a new ruling after determining when the one-year limitations period began, or show cause why the court had not done so. We declined to address the merits of the controversy at that time.

The trial court vacated its ruling. The parties submitted supplemental briefing addressing solely the issue of the "trigger date" for the one-year limitations period. In December 2008, the trial court ruled the limitations period began upon the issuance of the right-to-sue notice, concluding: "Plaintiff has not [presented] the court with any case or authority that the statute of limitations commences to run upon receiving or obtaining the Right to Sue Letter. The statute clearly says the date of the notice. The court finds no basis for equitable tolling of the statute."

Hall filed a motion for reconsideration but the trial court entered judgment in the case before the motion was heard. In February 2009, Hall filed a motion for new trial. Hall contended he had "newly obtained" evidence indicating the limitations period should be equitably tolled. Hall argued that from November 4, 2005, through January 13, 2006, he was a full-time resident in a "lock-down Adult Rehabilitation Center," and from November 4, 2005, through December 4, 2005, he "was not permitted contact with the outside community, including his attorney." Hall further contended he was "mentally disabled" between November 4, 2005, and January 13, 2006, and could not pursue his claims during that period. In support of the motion, Hall submitted his declaration in which he described his relapse and residency at the Santa Monica Adult Rehabilitation Center; a November 14, 2008 letter from the director of rehabilitation at the center; and an information booklet that described the rehabilitation program. The letter and information booklet indicated the program Hall participated in involved an "initial 30 day restriction where the beneficiary is not permitted off premises."

The trial court denied Hall's motion for new trial. The court concluded Hall had not presented any newly discovered evidence that was not available

to his counsel in the prior motions before the court. The court also found Hall failed to present any evidence of a mental disability.

Hall timely appealed from the judgment.

## DISCUSSION

### I. *Hall's Complaint Was Barred by the Statute of Limitations*

The summary judgment ruling before us presents only one question of statutory interpretation: when does the one-year limitations period of section 12965(b) begin to run? This is a legal matter we review de novo. The application of a statute to undisputed facts is also a question of law subject to de novo review. (*Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560, 1569 [116 Cal.Rptr.3d 596].)

#### A. *Section 12965(b)'s One-year Limitations Period*

The FEHA prohibits acts of unlawful discrimination in employment and housing and sets forth procedures for the DFEH to follow in handling discrimination complaints. (Gov. Code, § 12900 et seq.) Before filing a civil action asserting claims under the FEHA, a claimant must first exhaust administrative remedies by filing a complaint with the DFEH. (§ 12960, subd. (b).) The DFEH investigates complaints and decides whether to file an accusation. (§§ 12963, 12965, subd. (a).) A DFEH-issued right-to-sue notice informs the claimant that he or she may file a civil action. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 106 [84 Cal.Rptr.3d 734, 194 P.3d 1026] (*McDonald*).) Section 12965(b) states in relevant part: "If an accusation is not issued within 150 days after the filing of a complaint, or if the department earlier determines that no accusation will issue, the department shall promptly notify, in writing, the person claiming to be aggrieved that the department shall issue, on his or her request, the right-to-sue notice. This notice shall indicate that the person claiming to be aggrieved may bring a civil action under this part against the person, employer, labor organization, or employment agency named in the verified complaint within one year from the date of that notice."[1] The one-year limitations period is also referenced in section 12965, subdivisions (d)(1) and (e)(1): "Notwithstanding subdivision (b), the one-year statute of limitations, commencing from the date of the right-to-sue notice by the Department . . . , to the person claiming to be

---

[1] Even if the claimant does not request a right-to-sue notice, the DFEH must issue one "upon completion of its investigation, and not later than one year after the filing of the complaint." (§ 12965(b).)

aggrieved, shall be tolled when all of the following requirements have been met . . . ."

Goodwill contends the language of the statute allows only one reading—that the one-year limitations period begins to run on the date of the right-to-sue notice. (See *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 117 [12 Cal.Rptr.3d 663]; *Williams v. Pacific Mutual Life Ins. Co.* (1986) 186 Cal.App.3d 941, 951 [231 Cal.Rptr. 234].) Hall, however, argues the limitations period can only begin when the claimant actually receives the right-to-sue notice. Hall relies on cases that describe a claimant's receipt of the right-to-sue letter as a key part of exhausting administrative remedies, as well as federal cases interpreting the right-to-sue notice provisions of title VII of the Civil Rights Act of 1964 (Title VII; 42 U.S.C. § 2000e et seq.). To evaluate Hall's argument we first look to the statute itself.

### B. *Statutory Analysis*

■ The principles of statutory analysis are well established. " '[W]e must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." [Citation.] If the statutory language is clear and unambiguous our inquiry ends. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." [Citations.] In reading statutes, we are mindful that words are to be given their plain and commonsense meaning. [Citation.]' [Citation.] Thus, we 'avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend. [Citations.]' [Citation.] ■ 'We have also recognized that statutes governing conditions of employment are to be construed broadly in favor of protecting employees. [Citations.]' [Citations.]" (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1394 [117 Cal.Rptr.3d 377, 241 P.3d 870].)

In *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 493–494 [59 Cal.Rptr.2d 20, 926 P.2d 1114] (*Romano*), our Supreme Court explained additional considerations specific to the FEHA's limitations periods: "FEHA itself requires that we interpret its terms liberally in order to accomplish the stated legislative purpose. (Gov. Code, § 12993, subd. (a); [citation].) In order to carry out the purpose of the FEHA to safeguard the employee's right to hold employment without experiencing discrimination, the limitations period set out in the FEHA should be interpreted so as to promote the resolution of potentially meritorious claims on the merits." (See also *McDonald, supra*, 45 Cal.4th at p. 108.)

■    We see no ambiguity in section 12965(b)'s language. As noted above, we therefore " 'presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.]" (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 485 [17 Cal.Rptr.3d 88].) Section 12965(b) states the right-to-sue notice must indicate the claimant may bring a civil action within one year "from the date of that notice." The term "notice" does not refer to notice generally. Instead, "notice" specifically refers to the right-to-sue notice the DFEH must send to the claimant. It is the date of "that notice" that starts the one-year limitations period. Nothing in the language suggests the Legislature intended "from the date of that notice" to really mean from the date of *receipt* of the notice. To reach this result would require the insertion of additional terms into the provision—in effect a revision rather than an interpretation. "We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297] (*California Fed. Savings*); see *City and County of San Francisco v. International Union of Operating Engineers, Local 39* (2007) 151 Cal.App.4th 938, 945 [60 Cal.Rptr.3d 516].) The plain meaning of the phrase "from the date of that notice" is simple—the claimant has one year to file a civil action from the date of the right-to-sue notice. The later subdivisions referring to the limitations period are even more specific in their description of the one-year limitations period as "commencing from the date of the right-to-sue notice." (§ 12965, subds. (d)(1), (e)(1).)

The historical development of Government Code section 12965(b) supports this plain reading. A provision similar to Government Code section 12965(b) was enacted in 1977 and codified as Labor Code section 1422.2, subdivision (b). In its original form the provision read, in relevant part: "If an accusation is not issued within 150 days after the filing of a complaint, or if the division earlier determines that no accusation will issue, the division shall so notify the person claiming to be aggrieved. Within one year of receipt of such notice, any person claiming to be aggrieved may bring a civil action under this part against the person, employer, labor organization or employment agency named in the verified complaint." (Lab. Code, former § 1422.2, subd. (b), added by Stats. 1977, ch. 1188, § 34, p. 3911, repealed by Stats. 1980, ch. 992, § 11, p. 3166.) Originally, the limitations period was triggered by the claimant's receipt of a right-to-sue notice. However, the following year the provision was amended to read: "If an accusation is not issued within 150 days after the filing of a complaint, or if the division earlier determines that no accusation will issue, the division shall promptly notify, in writing, the person claiming to be aggrieved. Such notice shall indicate that

the person claiming to be aggrieved may bring a civil action under this part against the person, employer, labor organization or employment agency named in the verified complaint within one year from the date of such notice." (Stats. 1978, ch. 1361, § 12, p. 4518.)

The Legislature deliberately changed the language of the provision, *removing* "receipt" and replacing it with "from the date of" the notice. We may infer from this amendment that the Legislature intended the one-year limitations period to begin running from the date of the right-to-sue notice rather than from the date the claimant receives the notice. Had the Legislature intended the opposite, it could have kept the word "receipt" in the provision. It did not. (*California Fed. Savings, supra*, 11 Cal.4th at pp. 349–350.)

### C. Case Law Does Not Support a Different Conclusion

Hall contends that several cases support his argument in their discussions of a claimant "receiving" or "obtaining" a right-to-sue notice as a critical part of the administrative exhaustion requirements. We disagree because none of the authorities Hall cites considered the question confronting us here.

For example, in *Romano, supra*, 14 Cal.4th at page 484, our Supreme Court addressed whether the one-year period to file an administrative complaint with the DFEH began to run when an employee was notified he would be terminated, or on the date of termination. (*Romano*, at p. 491; see also Gov. Code, § 12960, subds. (a), (d).) The court was not concerned with the one-year limitations period for filing a civil suit. In a general and brief summary of the FEHA's requirements, the court stated: "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the Department . . . and must obtain from the Department a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA." (*Romano*, at p. 492.) The court then proceeded to discuss the limitations period for filing an administrative complaint. The opinion was unrelated to the question of what triggers the section 12965(b) limitations period. We therefore do not read the court's statement that an employee must "obtain" a notice of right to sue as a holding that the one-year limitations period only begins to run when a claimant receives the notice.

Similarly, in *Grant v. Comp USA, Inc.* (2003) 109 Cal.App.4th 637 [135 Cal.Rptr.2d 177] (*Grant*), the Court of Appeal considered whether a plaintiff employee had exhausted her administrative remedies. The employee received one right-to-sue notice which the DFEH subsequently rescinded. There were

questions about whether the DFEH had issued a second right-to-sue notice against the employer. The employee and her counsel were unable to produce the notice, although counsel testified the letter existed but was lost or misplaced. (*Id.* at p. 641.) The court described the importance of the right-to-sue notice and summarized relevant cases with the statement: "These cases suggest that obtaining a right-to-sue notice is the final necessary step in exhausting one's administrative remedies under the FEHA." (*Id.* at p. 646.) But the court further noted: "There is no California Supreme Court case that directly addresses whether obtaining a right to sue notice is a necessary part of exhaustion of administrative remedies." (*Ibid.*)

*Grant* does not concern the one-year limitations period or the question of when that period begins. Although the court used the phrase "obtaining a right to sue notice," this language is not precedential or even persuasive on the question of when the one-year limitations period begins to run. Indeed, in *Grant*, the court declined to read precedential value into language used in other cases about an employee "obtaining" a right-to-sue notice since those cases dealt with different legal questions. The *Grant* court concluded that under the circumstances of that case, the court could find the employee had exhausted her administrative remedies, even though she may not have obtained or received a second right-to-sue notice. (*Grant, supra,* 109 Cal.App.4th at p. 650.)

Likewise, none of the other California cases Hall cited in the trial court analyzed the issue confronting us in this case. (See, e.g., *Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1120–1121 [257 Cal.Rptr. 665] [describing FEHA administrative exhaustion requirements and noting claimant may bring civil action "within one year after receiving notice"; case concerns whether employee exhausted administrative remedies on age harassment claim when charge filed with DFEH mentioned only sex discrimination]; *Carmichael v. Alfano Temporary Personnel* (1991) 233 Cal.App.3d 1126, 1130 [285 Cal.Rptr. 143] [citing *Yurick*; case concerns whether FEHA applied to employee's common law claims].) In *Grant*, the court noted the proposition that informs our discussion here: " 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered.' [Citations.]" (*Grant, supra,* 109 Cal.App.4th at p. 647.)

The unpublished federal decisions Hall cites are no more helpful to his argument.[2] These cases identify a claimant's receipt of the right-to-sue notice

---

[2] Unpublished federal cases are not binding authority but they may be cited as persuasive. (*Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, fn. 6 [107 Cal.Rptr.3d 373], citing *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18 [72 Cal.Rptr.3d 112, 175 P.3d 1170].)

as the beginning of the one-year limitations period. But they neither specifically consider whether issuance or receipt of the right-to-sue notice is the proper trigger for the limitations period, nor analyze the relevant statutory language. (*Wilton v. San Francisco* (N.D.Cal., Dec. 11, 1992, No. C 91-3902) 1992 U.S.Dist. Lexis 19439; *Deppe v. United Airlines* (N.D.Cal., Dec. 20, 2000, No. C 00-03185 CRB) 2000 U.S.Dist. Lexis 18749 [stating without analysis that employee had one year from receipt of DFEH right-to-sue notice to file; civil action was filed more than three years after receipt of Equal Employment Opportunity Commission (EEOC or Commission) right-to-sue letter]; *Paine v. Department of Mental Health Services* (N.D.Cal., Feb. 7, 1995, No. C-92-2953-SC) 1995 U.S.Dist. Lexis 1594, p. *17 [stating only that § 12965(b) "sets forth a one-year statute of limitations for filing a civil action after receipt of a right-to-sue notice from the Department"].) As both parties acknowledge, in *Heath v. AT&T Corp.* (N.D.Cal., Sept. 12, 2005, No. C-05-0719 VRW) 2005 U.S.Dist. Lexis 34334, the court noted no other court had "squarely addressed" the question of when the one-year limitations period begins, and further declined to do so. (*Id.* at p. *22.)

█ Hall also urges us to consider federal cases that interpret Title VII's 90-day limitations period. As our high court noted in *Romano*, "courts of this state have relied upon federal authority interpreting title VII in determining the meaning of analogous provisions of the FEHA." (*Romano, supra*, 14 Cal.4th at p. 498.) However, federal authority is only persuasive if the Title VII and FEHA provisions are in fact analogous.

Here, the two relevant provisions are significantly different. Under Title VII, if a charge filed with the EEOC "is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . ." (42 U.S.C. § 2000e-5(f)(1).) Unlike the FEHA, which describes the one-year limitations period as starting "from the date of" the right-to-sue notice, Title VII connects the start of the 90-day limitations period to the "giving of notice" that the EEOC will not file a civil action or has dismissed the charge.

Federal courts accordingly have interpreted this provision to mean that the 90-day period does not begin until the claimant actually has notice of the

right to sue, usually when the claimant receives the right-to-sue notice. (*Payan v. Aramark Management Services Ltd.* (9th Cir. 2007) 495 F.3d 1119, 1122 [90-day period begins to run from the date on which right-to-sue notice arrives at claimant's address of record]; *Plunkett v. Roadway Express, Inc.* (10th Cir. 1974) 504 F.2d 417, 418 [90-day period begins to run from the date on which the claimant receives the right-to-sue notice]; see also 29 C.F.R. § 1601.28(e)(1) (2010) [EEOC regulation states that notice of right to sue shall include authorization to claimant to bring a civil action under relevant statutes "within 90 days from receipt of such authorization"].) Title VII's language supports these interpretations. In contrast, section 12965(b)'s use of the term "notice" specifically refers to the right-to-sue notice, not the concept of notice generally. We are unable to interpret "from the date of that notice" in the same way federal courts have interpreted "from the giving of such notice."

The difference in the length of the two limitations periods is also significant. Title VII's limitations period is only an extremely short 90 days, while the FEHA allows a claimant one year to file a civil action after the right-to-sue notice is issued. Mistakes in delivery or even minor mail delays could significantly impair a Title VII claimant's ability to timely file a civil action. But the same delivery problems would generally have less of an impact for the FEHA claimant who has 275 additional days to get a civil suit on file. On appeal, Hall cites several federal cases that explain that it is critical for a Title VII plaintiff to know when the 90-day limitations period begins to run. (*Missirlian v. Huntington Memorial Hospital* (9th Cir. 1981) 662 F.2d 546, 549, citing *Lynn v. Western Gillette, Inc.* (9th Cir. 1977) 564 F.2d 1282, 1285, *Mahroom v. Hook* (9th Cir. 1977) 563 F.2d 1369, 1375.) It is equally important for the FEHA plaintiff to know when the one-year limitations period begins to run, but this certainty is provided by commencing the limitations period as of the date of the right-to-sue notice.

Our interpretation of section 12965(b) is not inimical to the purpose of the FEHA. Starting the one-year limitations period from the date of the right-to-sue notice is a bright-line rule that gives claimants clarity as to when they must file a civil action to pursue their FEHA claims in court. Hall argues that if the limitations period begins to run from the date of the notice, the claimant must bear the brunt of mail delays or mistakes in delivery with an artificially shortened period in which to file suit.[3] Although this may be true, the bottom line is that the language of the statute contradicts Hall's argument

---

[3] We note that Hall's argument does not reflect what happened in this case. Hall requested an immediate right-to-sue notice that would allow him to file suit without waiting for the DFEH to investigate his administrative complaint. He thus knew or should have known the right-to-sue notice was coming in relatively short order. Although Hall contends the notice was probably not sent on the date of the notice (Christmas Eve), it still arrived at the address he

that the FEHA's one-year limitations period begins to run when the claimant receives the notice of right to sue rather than from the date of the notice itself. The most liberal construction of the statute does not lend itself to Hall's interpretation of the provision. The historical development of section 12965(b) further undermines Hall's position. And there is no legal authority to support his contention. While " ' "[l]iteral construction of statutory language will not prevail if contrary to the legislative intent apparent in the statutory scheme," ' " we cannot conclude that commencing the one-year limitations period from the date of the right-to-sue notice threatens a claimant's ability to seek redress for unlawful discrimination to such an extent that we must assume the Legislature intended something else despite the provision's clear language. (*Ennabe v. Manosa* (2010) 190 Cal.App.4th 707, 713 [118 Cal.Rptr.3d 260].)

■ The FEHA's one-year limitations period began to run as of the date of the right-to-sue notice issued to Hall, December 24, 2004. Hall's civil suit, filed December 30, 2005, was untimely.

## II. *The Trial Court Properly Denied Hall's Motion for a New Trial*

Hall also challenges the trial court's denial of his motion for a new trial. We find no error.

"An order granting summary judgment is properly challenged by a motion for a new trial. . . . [T]he motion may assert that the summary judgment should be reversed because there is '[n]ewly discovered evidence' (Code Civ. Proc., § 657, subd. 4)." (*Doe v. United Air Lines, Inc.* (2008) 160 Cal.App.4th 1500, 1504–1505 [73 Cal.Rptr.3d 541], citations omitted (*Doe*).) "Generally, rulings on new trial motions are reviewed for an abuse of discretion. (*Aguilar* [*v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859 [107 Cal.Rptr.2d 841, 24 P.3d 493]].) Nonetheless, in the case of an order denying a new trial following summary judgment, the determinations underlying the denial dictate our standard of review. [Citation.]" (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1176 [80 Cal.Rptr.3d 6].) To the extent the court's denial was based on Hall's assertion of newly discovered evidence, we review the order for an abuse of discretion. (*Doe, supra,* at p. 1505; *Cansdale v. Board of Administration* (1976) 59 Cal.App.3d 656, 667 [130 Cal.Rptr. 880].)

---

had designated one week later. There was no mistake in delivery and mail delays were not what impaired his ability to file suit earlier.

■   To prevail on a motion for a new trial based on newly discovered evidence, the moving party must demonstrate that " '(1) the evidence is newly discovered; (2) he or she exercised reasonable diligence in discovering and producing it; and (3) it is material to the . . . party's case.' [Citation.]" (*Doe, supra*, 160 Cal.App.4th at p. 1506; see also Code Civ. Proc., § 657, subd. 4.)

Hall's only argument in the new trial motion was that he had discovered new evidence indicating the FEHA's one-year limitations period should be equitably tolled. The "new" evidence was Hall's declaration and a letter and information booklet from the Santa Monica Adult Rehabilitation Center. Hall's declaration explained why he did not contact Boyce until December 2005. This evidence was not newly discovered. Both Hall and Boyce were necessarily aware of this evidence as of December 2005. Likewise, the letter and information from the rehabilitation center described Hall's dates of residency in the program and the program's rules. The letter and booklet may have been newly obtained in November 2008, but they only corroborated what Hall and his attorney already knew before Hall filed suit.

Further, even the letter and information from the rehabilitation center were available to Hall before he submitted briefing on the statute of limitations issue. The letter from the rehabilitation center was dated November 14, 2008, and hand delivered to Hall. Hall filed his brief on the statute of limitations issue on November 18, 2008. Despite having the information from the center, Hall did not present it to the court or argue that the limitations period was equitably tolled, even as an alternative argument.[4] Even if this evidence was sufficient to support an equitable tolling argument, it was not newly discovered. (*In re Marriage of Abargil* (2003) 106 Cal.App.4th 1294, 1302 [131 Cal.Rptr.2d 429].)

On appeal, Hall discusses only the merits of his equitable tolling arguments and does not acknowledge that our review is confined to evaluating the trial court's ruling on his motion for a new trial. We do not reach the merits of his equitable tolling claims. The trial court did not abuse its discretion in denying Hall's motion for a new trial based on newly discovered evidence.

---

[4] Since we find Hall did not establish the first necessary prong in a motion for new trial based on newly discovered evidence—that his evidence was newly discovered—we need not additionally consider whether he exercised reasonable diligence in discovering or producing it, or whether it was material to his case.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Rubin, J., and Grimes, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 8, 2011, S192651.